# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PATRICK ALLEN LANG,

        Petitioner,

                                        **Case No. 5:04-cv-109**

v.                                         **Hon. Gordon J. Quist**

DAVID GUNDY,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I.      Background

Following a joint jury trial, petitioner and his co-defendants Antoine Dion Wilkins and David Nealy were each convicted of numerous offenses committed during a multi-county crime spree that began in Mulliken, Michigan, and continued to Detroit, during the early morning hours of November 14, 1999. Petitioner committed crimes against two victims, a young woman and her father. For purposes of this report and recommendation, the court will refer to the young woman as "the victim" and her father as "the victim's father."[1]

> Defendant Lang was convicted of first-degree home invasion, M.C.L. § 750.110a(2), two counts of armed robbery, M.C.L. § 750.529, two counts of kidnapping, M.C.L. § 750.349, bank robbery, M.C.L. § 750.531, fourteen counts of first-degree CSC, M.C.L. § 750.520b(1)(e), UDAA, M.C.L. § 750.413, felony-firearm, M.C.L. § 750.227b, and conspiracy to commit first-degree home invasion, conspiracy to commit armed robbery, conspiracy to commit kidnapping,

---

[1] By using this terminology, the court in no way suggests that the father was not a victim to this heinous crime spree.

and conspiracy to commit first-degree CSC, 750.157a. He was sentenced to concurrent prison terms of 150 to 240 months for the home invasion conviction, 400 to 720 months each for the first-degree CSC convictions, 300 to 480 months each for the armed robbery and kidnapping convictions, 225 to 480 months for the bank robbery conviction, 24 to 60 months for the UDAA conviction, 95 to 240 months for the conspiracy to commit first-degree home invasion conviction, 210 to 480 months for the conspiracy to commit armed robbery conviction, 260 to 480 months each for the conspiracy to commit kidnapping and conspiracy to commit first-degree CSC convictions, and a consecutive two-year prison term for the felony-firearm conviction.

*People v. Lang*, No. 232989, slip op. at 1-2 (Mich. App. 2003) (footnote omitted).[2]

Petitioner raised the following issues to the Michigan Court of Appeals:

I.      Was [petitioner] deprived of his Am VI rights to an impartial jury when the trial court denied his motion for change of venue?

II.     When the prosecutor co-mingled an additional opening statement as part of his voir dire interrogation did he deprive [petitioner] of his rights under Ams V and XIV of the U.S. Constitution?

III.    Was [petitioner] deprived of his Ams V and XIV rights of due process when he was tried jointly with three other defendants?

IV.     Was [petitioner] deprived of his Am VI rights of confrontation and his Ams V and XIV rights of due process when statements of a non-testifying co-perpetrator were allowed into evidence?

V.      Was [petitioner] deprived of his Am VI right to the effective assistance of counsel when his trial counsel stipulated to trial consolidation, and failed to object to testimony violating his right to confrontation?

*See* docket no. 20.  The Michigan Court of Appeals affirmed petitioner's convictions.  *People v.*

*Lang*, No. 232989.

---

[2] The Michigan Court of Appeals opinion bears the names of two co-defendants, i.e., *People v. Wilkins*, No. 229697, and *People v. Lang*, No. 232989.  For purposes of this report and recommendation, the court will refer to this opinion as *People v. Lang*.

Petitioner, through new counsel, raised these same five issues in a delayed application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied the application. *People v. Lang*, No. 123439 (Mich. July 28, 2003).

Petitioner, through counsel, filed a petition for writ of habeas corpus raising these five issues, but phrased in a slightly different manner:

I. Did the trial court's denial of [petitioner's] motion for change of venue when [petitioner's] charges were extremely heinous and met with community outcry and extensive publicity deny petitioner due process and the constitutional right to a fair trial?

II. Was petitioner denied due process and the constitutional right to a fair trial by prosecutorial misconduct when the prosecutor biased the prospective jury by making argumentative speeches during voir dire?

III. Was petitioner denied his Fifth and Fourteenth Amendment rights of due process when he was tried jointly with other defendants?

IV. Was petitioner deprived of his right to confront witnesses when statements of a non-testifying co-defendant were allowed into evidence?

V. Was petitioner denied effective assistance of counsel, when trial counsel stipulated to an obviously damaging joint trial and failed to object to the admission of the non-testifying co-defendant's statements?

**II.     Standard of Review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996, which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342.

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

4

### III.    Exhaustion

Before a state prisoner may seek habeas relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270 (1971);  *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994). In the present case, petitioner has exhausted all of his habeas claims in the state courts.

### IV.    Discussion

### A.    Change of venue (Issue I)

First, petitioner contends that the trial court violated his constitutional right to fair trial by denying his trial counsel's motion for change of venue.  The record reflects that petitioner's trial counsel requested a change of venue for three reasons: (1) "although we have chosen a jury at this time, your Honor, defense counsel in total used each and every one of its peremptory challenges;" (2) "we were able to choose a jury, but ran out of peremptories while doing so;" (3) "[g]iven the pretrial publicity in this area. . . the closeness of the communities nearby, the questions and answers that were given by many of the witnesses that are -- many of the  -- the jurors which are now seated, given the pretrial publicity, their knowledge of the case beforehand, we would renew our motion to have the venue changed."  Trial Trans. III at 122-23.  The prosecutor responded, stating that "[w]e have fourteen people who under oath said that they could be fair and impartial jurors, and they met the constitutional and statutory requirements to be jurors."  *Id.* at 124.

After hearing these brief arguments, the trial court ruled as follows:

> The Court had previously taken the motion under advisement pending the ability to select a fair and impartial jury.  The Court has permitted fourteen people to be seated. I'm satisfied that the fourteen people are fair and impartial jurors.  Accordingly, the Court will deny the motion.

*Id.* at 124.

The Michigan Court of Appeals addressed the issue as follows:

Both defendants argue that the trial court erroneously denied their motion for a change of venue due to pretrial publicity. We disagree. We review a trial court's decision on a motion for change of venue for an abuse of discretion. *People v. Jendrzejewski*, 455 Mich. 495, 500; 566 NW2d 530 (1997).

Criminal defendants are generally tried in the county where the alleged crime occurred. *Id.* at 499; MCL 600.8312. However, a trial court may order a change of venue when the pretrial publicity is so highly inflammatory and unrelenting that the entire community is presumed to have been prejudiced by it. *Jendrzejewski*, *supra* at 499-501; MCL 762.7. Mere exposure to media reports about the defendant and the alleged crime does not automatically establish that a defendant was denied a fair trial. Rather, a reviewing court must closely examine the entire voir dire to determine if an impartial jury was impaneled. *Jendrzejewski*, *supra* at 516-517. Due process only demands that jurors act with a "lack of partiality, not an empty mind." *Id.* at 519.

In this case, the record discloses that the jurors were sequestered during voir dire to determine their exposure to the case. On appeal, defendants refer to the fact that several jurors admitted having heard about the case, but neither defendant discusses the actual amount and extent of publicity that existed. In addition, neither defendant has shown that the coverage was other than factual. Thus, defendants have not demonstrated that media coverage created a potential for prejudice through an inflammatory account of the events. *See Jendrzejewski*, *supra* at 506-507, 516-517.

Furthermore, our review of the jury voir dire leads us to conclude that an impartial jury was impaneled. Of the fourteen jurors finally chosen, each stated that they would be able to judge the case impartially, notwithstanding any previous information they had heard about the case. Although defendants complain that they were required to collectively exhaust their peremptory challenges in order to obtain a jury unbiased by pretrial publicity, we note that none of the defendants requested additional peremptory challenges under MCR 6.412(E)(2).

Under the totality of the circumstances, defendants have failed to present sufficient evidence of either extensive and inflammatory media coverage, or deep-seated predisposition on the part of a significant number of the jurors, nor have they met their burden of demonstrating either actual prejudice or a pattern of deep and bitter prejudice. *Jendrzejewski*, *supra*. The trial court did not abuse its discretion in denying defendants' motion for change of venue.

*People v. Lang*, No. 232989, slip op. at 2-3.

6

Under the Fourteenth Amendment, a defendant in a state criminal trial is entitled to a fair trial by a panel of impartial, indifferent jurors. *Irvin v. Dowd*, 366 U.S. 717, 721-723 (1961). The Sixth Circuit recently summarized the rules regarding the determination of how pretrial publicity may jeopardize a defendant's right to an impartial jury in *Foley v. Parker*, -- F.3d --, No. 04-5746 (6th Cir. 2007). Rather than attempt to restate or paraphrase these rules, the court will quote at length from the *Foley* opinion:

> If pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the trial court should grant the defendant a change in venue. *Irvin v. Dowd*, 366 U.S. 717, 722-24, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir.2002). Prejudice resulting from pretrial publicity can be presumptive or actual. *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir.1999), *abrogated on other grounds*, *Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir.2000). Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community. *Ritchie*, 313 F.3d at 952-53; *Gall v. Parker*, 231 F.3d 265, 309 (6th Cir.2000). Prejudice from pretrial publicity is rarely presumed. *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir.1998).
>
> Where pretrial publicity cannot be presumed prejudicial, the trial court must then determine whether it rises to the level of actual prejudice. *Ritchie*, 313 F.3d at 962. The primary tool for discerning actual prejudice is a searching voir dire of prospective jurors. *Id.* The court must review the media coverage and the substance of the jurors' statements at voir dire to determine whether a community-wide sentiment exists against the defendant. *Nevers*, 169 F.3d at 366. Negative media coverage by itself is insufficient to establish actual prejudice, and the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of impartiality. *Id.* at 366-67. "[M]ere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint...." *DeLisle*, 161 F.3d at 382. The prospective juror must be able to lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court. *Irvin*, 366 U.S. at 723; *Ritchie*, 313 F.3d at 962. The relevant question is "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).
>
> *          *          *

7

> As explained above in our discussion about pretrial publicity, prior knowledge of the case or even an opinion on the merits is not enough to disqualify a juror who swears that he can set aside any opinion and decide the case upon the evidence presented at trial, and the juror's protestation of impartiality is to be believed. *See Patton*, 467 U.S. at 1035; *Irvin*, 366 U.S. at 723.

*Foley*, No. 04-5746, slip op. at 8, 11.

### 1.     Presumptive prejudice

First, the court concludes that the pretrial publicity did not result in presumptive prejudice.  There is no question that this case was covered by the media.  Petitioner's supporting memorandum includes an internet article from 1999.   *See* article attached to petitioner's memorandum as Exh. D. While petitioner contends that this article is evidence of publicity, and suggests that "with the increase in technology, the potential for jury tainting is much higher than under the traditional analysis limited to newspaper and television coverage,"[3] he presents no evidence that his trial was conducted in an "inflammatory, circus-like atmosphere," *id.*, or that the conviction was "obtained in a trial atmosphere that had been utterly corrupted by press coverage," *Murphy v. Florida*, 421 U.S. 794, 798 (1975).  *See DeLisle*, 161 F.3d at 382 ("The category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow. Indeed, the few cases in which the Court has presumed prejudice can only be termed extraordinary and it is well-settled that pretrial publicity itself - even pervasive, adverse publicity - does not inevitably lead to an unfair trial") (citations and internal quotations omitted).

---

[3] *See* Petitioner's Memo. at 14-15.

2.      **Actual prejudice**

Second, the court concludes that petitioner's claim of actual prejudice is without merit.  To resolve the issue of actual prejudice, the court considers whether the jurors' statements of impartiality should be believed "in view of the pretrial publicity."  *Foley*, slip op. at 9.  As the Supreme Court observed in *Murphy*, "[i]n a community where most veniremen will admit to a disqualifying prejudice, the reliability of the others' protestations may be drawn into question; for it is then more probable that they are part of a community deeply hostile to the accused, and more likely that they may unwittingly  have been influenced by it."  *Murphy*, 421 U.S. at 803.

There is no question that the parties spent considerable time and effort in choosing a jury in the underlying criminal case. The total number of jurors available for this trial is not readily apparent from the record.  Petitioner points out that 64 potential jurors were interviewed in chambers to determine the depth of their knowledge of the case.  *See* Petitioner's appellate brief at 14, citing Trial Trans. I at 39 through Trial Trans. III at 110 (docket no. 20).  Petitioner contends that, in the present case, "roughly fifty-percent of the jurors . . . admitted to prior knowledge of the case." Petitioner's Memo. at 17.  Petitioner's assertion suggests that the jury pool contained approximately 128 prospective jurors.

The court excused 28 jurors for cause.  *See* Summary of juror challenges attached to prosecutor's appellate brief (docket no. 20).  In addition, petitioner, co-defendant Nealy and co-defendant Wilkins each exercised 9 peremptory challenges, removing an additional 27 jurors.  *Id.* For its part, the prosecutor exercised 6 peremptory challenges.  *Id.*  The court ultimately identified 14 jurors who stated "that they would be able to judge the case impartially, notwithstanding any previous information they had heard about the case."  *People v. Lang*, No. 232989, slip op. at 2-3.

9

Based on this record, the court was entitled to believe the jurors' statements of impartiality. *Foley*, No. 04-5746, slip op. at 8, 11.

The court is not prepared find that the 14 empaneled jurors are not to be believed in this case due to a hostile community or prejudice. While petitioner contends that "roughly fifty percent" of the prospective jurors had knowledge of the case, he presents no evidence regarding the number of jurors that were disqualified due to an opinion of guilt, knowledge of the case or bias in favor of the prosecution. Based on the prosecutor's summary of jurors excused for cause (which petitioner does not contest), and a review of the trial transcript, it appears that nine jurors were excused for causes independent of an opinion of guilt, knowledge of the case or prosecutorial bias. *See* Summary of juror challenges. Rather, these nine jurors were excused for reasons such as prior criminal convictions, the inability to speak English, faulty memory, religious convictions, poor hearing and one juror who formed an opinion based upon ESP (extra sensory perception). *Id.*; Trial Trans. I at 156-60, 165-76, 293-97, 321-24, 346-50; Trial Trans. II at 12-14, 156-57, 254-55, 260-67.

It appears that approximately 18 prospective jurors were excused for cause related to opinion of guilt, knowledge of the case or prosecutorial bias. These prospective jurors account for approximately 14% of the 128 prospective jurors. This number of prospective jurors admitting to disqualifying prejudice does not rise to the level one would expect to find in a community permeated with hostility or prejudice against the criminal defendant. As the Sixth Circuit observed in *Foley*, such community hostility, prejudice or bias was not shown where 44 of the 98 prospective jurors (i.e., approximately 45%) were disqualified because of opinion of guilt, knowledge of the case, or bias in favor of the prosecution. *Foley*, slip op. at 9. While the court is not bound by any

specific percentage of prospective jurors for purposes of establishing a "deeply hostile community," the court concludes that in this case, the jury selection did not reflect such a community.  In short, the court has no reason to conclude that the 14 empaneled jurors were "unwittingly" influenced by the pre-trial publicity.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.    Prosecutor's arguments during the jury voir dire

Next, petitioner contends that the prosecutor inappropriately and intentionally began opening arguments during the jury voir dire.[4]

The jury voir dire in the case lasted nearly three days.  *See* Trial Trans. I, II and III. At the beginning of the second day of jury selection, the prosecutor made the following statement:

> Yesterday, I believe that [a co-defendant's counsel] asked questions regarding the aiding and abetting instruction regarding intent.  And he told you that the intent  that is required is that they had to give assistance, intending -- with the intent that the crime be committed.  Well, that's not the whole instruction.  I believe the whole instruction will be that they gave assistance with the intent for that crime to be committed or knowing that another person intended to commit the crime.
>
> My question to you, will you all agree to listen to the Court's instruction regarding the elements of aiding and abetting and follow those instructions?
>
> You all believe that you can?

---

[4] Petitioner erroneously cites the offending statement as appearing at Trial Trans. I at 133, rather than Trial Trans. II at 7.

It was also suggested, I believe yesterday, that this is a complicated case. And it is not. The proofs in this case are gonna show that the -- these three Defendants, along with a fourth Defendant by the name of Craig Battiste [sic], three of them broke into the [victim's] home with the intent to steal and at the time they robbed both [the victim] and [the victim's father]. Two of them -- two of them, Craig Battiste [sic] and [petitioner], sexually assaulted [the victim] while in the home. And then later, [the victim's father] was kidnapped by being confined in the basement, by being duct taped, while [the victim] was abducted by being taken from her home. She was driven to Detroit, where the four Defendants contributed together to purchase a hotel room, where she again was sexually assaulted. On the trip down from Detroit -- or, strike that -- from Mulliken to Detroit she was also sexually assaulted.

Trial Trans. II at 6-7.

Petitioner's counsel objected on the basis that the prosecutor did not include a question. *Id.* at 7-8. The court twice directed the prosecutor to ask a question. *Id.* at 8-9. Finally, the prosecutor asked the following question:

Ladies and gentlemen, as I've indicated, there's gonna be a difference in counts in this case. If the proofs show that two of the Defendants assisted in some of those counts but did not insist -- assist in the other counts of sexual conduct, can you return a verdict of guilty to the charges where they did give assistance or encouragement?

You all can?

Thank you.

No further questions, your Honor.

*Id.* at 9.

The Michigan Court of Appeals addressed the issue as follows:

Defendant Lang argues that he was denied a fair trial because the prosecutor improperly used his jury voir dire examination as a substitute for an additional opening statement. We find no merit to this issue. The trial court sustained defendant's objections to the improper argumentative questioning during voir dire. Further, the trial court instructed the jury that the attorneys' statements were not evidence, and the challenged remarks concerned evidence that the prosecution later presented at trial. *See People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998);

12

> *People v. Watson*, 245 Mich. App 572, 586; 629 NW2d 411 (2001).  Accordingly,
> defendant was not denied a fair trial on this basis.

*People v. Lang*, No.  232989, slip op. at 4-5.

Petitioner contends that the prosecutor engaged in a species of prosecutorial misconduct which resulted in a constitutional violation.  Prosecutorial misconduct cannot serve as the basis of habeas corpus relief unless it is so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).  The appropriate standard of review for a prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*  The court should consider four factors in determining whether a prosecutorial remark rises to the level of a due process violation: "(1) whether the remark tended to mislead the jury or to prejudice the accused; (2) whether the remark was isolated or extensive; (3) whether the remark was accidentally or deliberately placed before the jury; and (4) the strength of the evidence against the accused." *Hutchison*, 303 F.3d at 750.

In applying the second and third factors, it appears to the court that this statement was an isolated remark that the prosecutor deliberately placed before the jury.  With respect to the first factor, it does not appear to the court that this remark tended to mislead the jury or prejudice the accused.  After the jury selection, the  trial court instructed the jury that the lawyer's opening

13

statements and closing arguments are not evidence. Trial Trans. III at 115. The court instructed the

jury that they must base their verdict "only on the evidence," and that "[e]vidence includes only the

sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I tell you to

consider as evidence." *Id.* at 115-16. The court further instructed the jury that:

> There is more than one Defendant in this case. The fact that they are on trial
> together is not evidence that they were associated with each other or that either one
> is guilty -- or any of them are guilty. You should consider each Defendant
> separately. Each is entitled to have his case decided on the evidence and the law that
> applies to him. If any evidence is limited to one or two Defendants, you should not
> consider it as to the other Defendants or Defendant.

*Id.* at 120.

Finally, with respect to the fourth factor, the court concludes that the effect of the

prosecutor's statement was minimal, given the substantial evidence against petitioner. This evidence

included extensive testimony from the victim, who identified petitioner in court. Trial Trans. IV at

179-80. The victim testified, among other things: that petitioner "put me down on the couch with

a gun against my neck and he stuck his penis in my mouth;" that petitioner stuck his penis in her

mouth a second time and told her to brush her teeth; that petitioner forced her to get dressed, drive

her car to an ATM and withdraw $200; that he made her get into a different vehicle which contained

items stolen from her house; and while he rode with the victim in the back of the vehicle, stuck his

penis in her mouth and touched her breasts. Trial Trans. IV at 179, 190, 192-97, 200-02. The victim

further testified that after petitioner and co-defendants drove to a motel, petitioner laid on the bed

and stuck his penis in her vagina, then stuck his penis in her mouth when a co-defendant stuck his

penis in her vagina. Trial Trans. IV at 221-22. Petitioner then brought the victim into the bathroom

and washed her stomach, breasts, legs and vagina. *Id.* at 223-24.

After considering the four factors, the court concludes that the prosecutor's statement made during the jury voir dire did not so infect the trial with unfairness as to make petitioner's resulting convictions a denial of due process.  Accordingly, this claim should be dismissed.

### C. Petitioner was denied his constitutional rights when he was tried with two co-defendants.

Next, petitioner contends that his joint trial with two co-defendants resulted in a denial of his due process rights.  Respondent contends that this matter is procedurally defaulted and not subject to habeas review.

The Michigan Court of Appeals declined to review this issue because petitioner failed to provide a transcript as required by the appellate rules:

> Defendant Lang next argues that his right to a fair trial was violated because he was tried jointly with codefendants Nealy and Wilkins. Defendant's failure to provide the transcript of the hearing on the prosecutor's motion for joinder, despite a request from this Court, constitutes a waiver of this issue. MCR 7.210(B)(1)(a); *People v. Anderson*, 209 Mich.App 527, 535; 531 NW2d 780 (1995); *see also People v. Wilson*, 196 Mich.App 604, 615; 493 NW2d 471 (1992).

*People v. Lang*, No. 232989, slip op. at 5.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural

15

rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner contends that the doctrine of procedural default should not apply to this issue because MCR 7.210(B)(1)(a) is not consistently or regularly applied by the state court and that it is manifestly unjust to deny habeas corpus relief on this basis, because the Michigan Court of Appeals apparently had the transcript for an appealing co-defendant. It appears that the Michigan Court of Appeals may have had a copy of the May 12, 2000 transcript, because it referred to the substance of the transcript in its opinion.  *See* discussion in § D, *infra*.  However, the court is not prepared to find the Michigan Court of Appeals' application of its appellate rules "manifestly unjust" based on this limited record.

Michigan Courts have explicitly recognized MCR 7.210(B)(1)(a) as the basis for a party's waiver of an issue since at least 1995.  *See People v. Anderson*, 209 Mich. App. 527, 535, 531 N.W.2d 780 (1995) (failure to provide the court of appeals with the relevant transcript as required by MCR 7.210(B)(1)(a) "constitutes a waiver of the issue . . . because an appellate court is unable to review the party's objection and the trial court's reason for the decision"). Accordingly, the rule was firmly established and regularly followed when petitioner filed his appeal.

Petitioner gives no cause for the procedural default of this issues. Petitioner's failure to demonstrate cause prevents federal review of  his habeas claims unless the court's failure to do

16

so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  In *Schlup*, 513 U.S. at 321, the Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

Petitioner does not explicitly raise his actual innocence as a ground for obtaining habeas review of his procedurally defaulted claims.  To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.  A habeas petitioner fails to demonstrate actual innocence when such evidence was presented to the jury, but the jury chose to credit the state's evidence over that presented by petitioner.  *See White v. Schotten*, 201 F.3d 743, 753-54 (6th Cir. 2000).  A credible claim of actual innocence must be based on reliable evidence not presented at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).  Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's claim is procedurally barred and not subject to habeas review.

In the alternative, even if this matter was not procedurally defaulted, petitioner would not prevail on the merits. Petitioner's decision to proceed with a joint trial did not violate his right to a fair trial. On the contrary, public policy supports the use of joint criminal trials:

> A strong policy presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts. Society has an interest in speedy and efficient trials. Separate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures. Moreover, the risk of prejudice to defendants in a joint trial is presumably low, because juries are presumed capable of sorting evidence and considering separately each count and each defendant. These considerations are overcome only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence. Thus, a defendant seeking severance at trial bears a strong burden and must demonstrate substantial, undue, or compelling prejudice.

*United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006) (quotation marks and citations omitted).

Here, petitioner did not "demonstrate substantial, undue, or compelling prejudice" for a separate trial. On the contrary, the record reflects that petitioner, along with his two co-defendants, and their attorneys, all consented to a joint trial. Trial Conf. Trans. at 4-8 (May 12, 2000) (docket no. 19).[5] Accordingly, in the absence of a procedural default, petitioner's claim is without merit and should be dismissed.

### D.      Statement of non-testifying co-defendants

Next, petitioner contends that the court erred in allowing police detectives to testify regarding hearsay statements given by non-testifying co-defendants.

The Michigan Court of Appeals addressed the issue as follows:

> Defendant Lang next argues that the admission of statements by co-defendants Nealy and Wilkins, neither of whom testified at trial, denied him a fair

---

[5] The Trial Conference Transcript is not separately indexed in the Rule 5 materials. Rather, it is attached to the *Ginther* Hearing transcript. *See* docket no. 19.

trial. A review of the record reveals that the trial court offered defendants Nealy, Wilkins, and Lang separate juries in order to dispel any prejudice in this regard. Each defendant stated on the record that, after discussing the matter with their attorneys, they had decided to forgo a separate jury as a matter of strategy. Moreover, when subsequently asked whether he objected to the admission of redacted statements by codefendants Nealy and Wilkins, counsel for defendant Lang specifically stated that he had no objection to their introduction. On this record, we conclude that defendant Lang affirmatively waived any claim of error. *People v. Carter*, 462 Mich. 206, 214-216; 612 NW2d 144 (2000).

*People v. Lang*, No. 232989, slip op. at 5.

### 1.      Sixth Amendment (Confrontation Clause)

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a criminal defendant is deprived of his rights under the Confrontation Clause when a non-testifying co-defendant's confession naming the defendant as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. As the court explained in *Bruton*:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Bruton*, 391 U.S. 123, 135-136 (citations omitted).

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the court considered whether *Bruton* required the same result "when the co-defendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." *Richardson*, 481 U.S. at 202.  The court determined that in such cases, "the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's

confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211.

The Sixth Circuit has summarized the *Richardson* decision as follows:

> The Court held that the admission of a non-testifying co-defendant's confession does not violate the other defendant's confrontation rights if (1) the confession was redacted to eliminate the other defendant's name and any reference to the other defendant, *id.* at 209; (2) the confession was not incriminating on its face, and became so only when linked with later evidence properly introduced at trial, *id.* at 208; and (3) the jury was instructed not to use the confession in any way against the other defendant, *id.* at 206-07.

*Mikesell v. Conley*, 51 Fed.Appx. 496, 505 (6th Cir. 2002). The court concludes that petitioner's Confrontation Clause claim fails, because it falls within the rule announced in *Richardson*.

As an initial matter, counsel has failed to provide the court with any transcripts of the statements made by co-defendants Wilkins and Nealy. Neither of these statements appear in the trial transcript, although the transcript references that tapes were played for the jury and transcripts of the witness' statements were distributed to the jury. Trial Trans. VI at 54 [Nealy], 85-85 [Wilkins].[6] Nevertheless, the record reflects that redacted statements existed: the Michigan Court of Appeals referred to the statements as "redacted statements;" the three defense counsel held an extensive conference with the trial judge in which they discussed redacting the statements to remove references to the other co-defendants (Trial Trans. VI at 20-23); and petitioner's appellate counsel referred to the redaction of petitioner from the statements of Nealy and Wilkins (Petitioner's Appellate Brief at 20). Nothing in the record suggests that redacted statements facially incriminated petitioner.

---

[6] The court notes that a transcript of petitioner's redacted statement is attached to the government's brief as Appendix A.

Petitioner does not attack a specific portion of the redacted statements as violative of his constitutional rights.  Rather, petitioner attacks the testimony of certain witnesses that linked petitioner with the information contained in the redacted statements.   Specifically, petitioner relies on statements elicited on cross-examination of the detectives: "the jury has heard testimony from a non-testifying co-defendant that defendant awakened him stating, 'They followed this girl home and they were gonna do [sic] in her house but he said he wasn't going to do it;'" that co-defendant Wilkins "indicated that when [petitioner] began talking about forceful sex or rape, 'He didn't want any part of it;'" and that co-defendant Nealy "indicated that he never had sex with the victim and that he believed it was wrong."   Petitioner's Memo. at 36.  Petitioner's rather vague references to these statements does not include any citation to the trial transcript.

It appears that these statements were discussed on pages 20-21 of petitioner's appellate brief. *See* docket no. 20. In the appellate brief, petitioner pointed out two questions posed by co-defendant Wilkins' counsel and one question posed by co-defendant Nealy's counsel.  *Id.* Wilkins' counsel asked Detective Rojeski about co-defendant Wilkins' claim that when petitioner and co-defendant Battiste started to talk about forceful sex or rape, Wilkins indicated that he didn't want any part of it. Trial Trans. VII at 38-39.  Nealy's counsel asked Detective Houchlei, "[a]nd he [co-defendant Nealy] also indicated that the other two defendants, Mr. Lang and Mr. Battiste, had gloves on, is that correct?" Trial Trans. VI at 64.

Consistent with the requirements in *Richardson*, the court gave the jury cautionary instructions limiting the use of each co-defendant's statement.  None of the defense counsel objected to the prosecutor's motion to admit the transcript of petitioner's statement given to Detective Preuter.  *Id.* at 21-22.  The court gave a cautionary instruction to the jury as follows:

> And let me instruct the jury that as I've instructed you before, the fact that these defendants are on trial together is not evidence that they were associated with each other, that each one is guilty.  You must consider each defendant separately.  Each is entitled to have his case decided on the evidence and the law that applies to him.  This particular evidence is limited only to [petitioner] and you should not consider it in any way against either one of the other two defendants.

*Id.* at 22.

None of the defense counsel objected to the prosecutor's motion seeking to admit the transcript of Mr. Nealy's statement.  *Id.* at 52.  The court gave a similar cautionary instruction to the jury that:

> This evidence is submitted limited to the one defendant, Mr. Nealy.  You should not apply it in any way in the case of Mr. Lang or Mr. Wilkins.

*Id.*

Finally, none of the defense counsel objected to the the prosecutor's motion to admit the transcript of Mr. Wilkins' statement.  *Id.* at 84.  Once again, the court gave a cautionary instruction to the jury that:

> The Court will admit the documents with the limited purpose for the jury, again, as instructed, you're only to consider this evidence against the Defendant Wilkins and not against the other two defendants.  You should not consider it in any way against the other two defendants.

*Id.* at 84-85.

Based on this record, the court concludes that the statements elicited on cross-examination did not violate petitioner's confrontation rights under *Richardson*: the co-defendants' statements were redacted; the statements were not facially incriminating; the statements were linked to petitioner by other evidence presented at trial; and the jury was instructed not to use the statements against petitioner.  *See, e.g., United States v. Halteh*, No. 05-5245,  2007 WL 806005 at 8 (4th Cir. March 15, 2007) ("*Richardson* holds that where a non-testifying codefendant's redacted

out-of-court statement identifies the defendant by implication when linked with evidence at trial, such statement is admissible so long as a proper limiting jury instruction is given"); *Mikesell*, 51 Fed.Appx. at 505 (6th Cir. 2002) ("there is no clearly established Supreme Court precedent indicating that a non-facially-incriminating co-defendant statement can be linked up so strongly as to violate *Richardson*").  Accordingly, petitioner's claim should be dismissed on this basis.

### 2.    Invited Error

Second, petitioner's claim should be dismissed on a separate ground under the "invited error" doctrine.  "The doctrine of invited error refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit."  *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993) (internal quotations omitted). "The doctrine of 'invited error' is a branch of the doctrine of waiver in which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside. When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error."  *Fields v. Bagley*, 275 F.3d 478, 485-86 (6th Cir. 2001) (citations omitted).

Defense counsel were well aware of the problem posed by the prosecutor's presentation of transcripts of the co-defendants' statements.  First, the parties addressed this issue at the May 12, 2000 trial conference.  At that time, petitioner and his co-defendants agreed to a joint trial.  The following colloquy occurred between the court, petitioner and his counsel (Mr. Rudolph):

> The Court:    I might indicate on the record that the Court was -- participated in the discussion regarding whether or not there would be separate juries. Court indicated from the information the Court had that that [sic] would -- it would be likely that the Court would seat separate juries if the Court was requested to do so.  And it was my understanding that the -- counsel was gonna discuss these matters with their -- their

|                 | clients and -- and let me know for sure what they intended to do. |
|-----------------|-------------------------------------------------------------------|

And it's you understanding -- you're still by the position, after talking to you client, that you want the separate -- I mean, sorry, you want the same jury?

*        *        *

| Mr. Rudolph:     | Patrick, we had a discussion as regards having separate juries in this matter? |
|------------------|--------------------------------------------------------------------------------|
| Defendant Lang:  | Yes. |
| Mr. Rudolph:     | And it is your wish that we go forward with a single jury in this matter? |
| Defendant Lang:  | Yes. |
| Mr. Rudolph:     | And you understand that -- that there may be some testimony from -- there may be some evidence introduced by having a single jury that may implicate you in this matter.  Do you understand that? |
| Defendant Lang:  | Yes. |
| Mr. Rudolph:     | No further questions, your Honor. |

Trial Conf. Trans. at 5-7.

Second, before the prosecutor tendered any of the statements at trial, all three defense counsel, through Attorney Robinson, requested a cautionary instruction on behalf of all defense counsel "that those statements should be used against our client only, not the other co-defendants." Trial Trans. VI at 4-5.  The court offered to instruct the jury "that they are to consider this only as to the defendant which it is being used against, it should not be considered for any other defendant." *Id.* at 5.  Defense counsel, through Attorney Robinson, agreed with this course of action, stating "I think our concern was just letting the jury know that it's to be used against the client that is making the statement, not the other clients."  *Id.* at 5-6.

24

As the court previously discussed, none of the defense counsel opposed the admission of the statements or objected to the court's three cautionary instructions. Petitioner induced the trial court to admit the three redacted statements into evidence and to issue three cautionary instructions to the jury. Now that petitioner has been convicted, he attacks these rulings as unconstitutional, and seeks to profit from having the rulings set side. Under these circumstances, the invited error doctrine precludes petitioner from seeking habeas relief on these newly-alleged trial errors. *See Fields*, 275 F.3d at 485-86; *Sharpe*, 996 F.2d at 129. Accordingly, this claim should be dismissed.

### E.    Petitioner's counsel was ineffective

Finally, petitioner contends that his trial counsel was ineffective for stipulating to a joint trial and failing to object to the admission of the non-testifying co-defendants' statements. The gist of petitioner's argument is that counsel's agreement to a joint trial sacrificed his Sixth Amendment right to confrontation. Petitioner's Memo. at 35. For the reasons stated below, the court concludes that counsel's decision to participate in a joint trial did not constitute ineffective assistance.

The Michigan Court of Appeals addressed this issue as follows:

Finally, both defendants argue that their respective trial attorneys were constitutionally ineffective. Because there was no *Ginther* [FN2] hearing, our review is limited to errors apparent on the existing record. *Avant*, *supra* at 507. In order to reverse an otherwise valid conviction due to ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness compared to professional norms and that the deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v. Toma*, 462 Mich. 281, 311; 613 NW2d 694 (2000), *citing Strickland v. Washington*, 466 U.S. 668, 687; 104 S Ct 2052; 80 L.Ed.2d 674 (1984).

Defendant Lang has not established entitlement to relief due to ineffective assistance of counsel. Indeed, as noted previously, defendant Lang has failed to provide the transcript of the hearing at which the court considered the question of severance, and the record discloses that defendant Lang personally consented to a

trial before a single jury as a matter of trial strategy. Further, defendant has failed to establish that the failure to object to the introduction of his codefendants' redacted statements so prejudiced him that, but for any error, the result of the proceedings would have been different, as the statements were cumulative of evidence already admitted. *Toma, supra.*

FN2. *People v. Ginther*, 390 Mich. 436, 443; 212 NW2d 922 (1973).

*People v. Lang*, No. 232989, slip op. at 5.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense," nor does it guarantee the accused "an excellent lawyer" or even a "good lawyer." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir. 1998). Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably

competent attorney would perform under similar circumstances." *United States v. Boone*, 437 F.3d 829, 839 (8th Cir.) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, 127 S. Ct. 172 (2006).

Here, the issue is whether petitioner's counsel was ineffective for failing to request a separate trial for petitioner. Counsel's decision to have a joint trial is a matter of trial strategy. *People v. Butler*, 193 Mich. App. 63, 66-67, 483 N.W.2d 430 (1992); *People v. Stubli*, 163 Mich.App. 376, 381, 413 N.W.2d 804 (1987). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006) (internal quotes and citations omitted).

The Michigan Court Rules (MCR) provide for two types of severance: a severance as of right under MCR 6.121(C) and a discretionary severance under MCR 6.121(D).

MCR 6.121(C) provides that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant."

MCR 6.121(D) allows a defendant to seek a discretionay severance:

> On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

MCR 6.121(D).

In *People v. Hana*, 447 Mich. 325, 524 N.W.2d 682 (1994), the Michigan Supreme Court explained Michigan's law of severance:

27

Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision. While we recognize that a joint trial of codefendants presenting antagonistic defenses has serious negative implications for the accused, the standard for severance is not lessened in this situation.

*Hana*, 447 Mich. at 346-347 (footnotes omitted).

The Michigan Supreme Court further explained the type of "antagonistic defenses"

that would demonstrate substantial prejudice:

Inconsistency of defenses is not enough to mandate severance; rather, the defenses must be "mutually exclusive" or "irreconcilable." *See, e.g., United States v. Arias-Villanueva*, 998 F.2d 1491, 1506 (CA 9, 1993); *United States v. Warner*, 955 F.2d 441 (CA 6, 1992); *United States v. Sherlock*, 865 F.2d 1069 (CA 9, 1989); *United States v. Spitler*, 800 F.2d 1267 (CA 4, 1986); *United States v. Vadino*, 680 F.2d 1329 (CA 11, 1982); *United States v. Mota*, 598 F.2d 995 (CA 5, 1979). Moreover, "[i]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice." *United States v. Yefsky*, 994 F.2d 885, 896 (CA 1, 1993). The "tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.*, at p. 897. Otherwise stated,

"It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*State v. Kinkade*, 140 Ariz. 91, 93, 680 P.2d 801, 803 (1984).]

28

The *Zafiro*[7] Court offered further insight into the nature of antagonistic defenses when it responded to the defendant's theory that, when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the government has proved its case beyond a reasonable doubt. The Court dismissed the notion that the very nature of their defenses, without more, prejudiced them. As to the first contention, the Court responded:

> [I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. . . . While "[a]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence," . . . a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant. [*Zafiro*, *supra*, 506 U.S. at ----, 113 S. Ct. at 938, 122 L. Ed.2d at 326.]

With regard to the second contention, the Court answered:

> The Government argued that all four petitioners were guilty and offered sufficient evidence as to all four petitioners; the jury in turn found all four petitioners guilty of various offenses. Moreover, even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and "juries are presumed to follow their instructions." *Richardson* [*v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702 [1709], 95 L.Ed.2d 176 (1987).] The District Court properly instructed the jury . . . . These instructions sufficed to cure any possibility of prejudice. [*Id.*, 506 U.S. at ----, 113 S. Ct. at 939, 122 L.Ed.2d at 326.]

*Hana*, 447 Mich. at 349-351.

Here, petitioner agreed to participate in a joint trial with full knowledge that other evidence presented to the single jury could implicate him. While a criminal defendant's consent to a trial strategy is not dispositive of the issue of ineffective assistance of counsel, it is probative of

---

[7] *Zafiro v. United States,* 506 U.S. 534 (1993).

the reasonableness of the chosen strategy and of trial counsel's performance. *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). In addition, petitioner has not rebutted the presumption that counsel rendered adequate assistance. *See Strickland*, 466 U.S. at 689-690; *Bell*, 72 F.3d at 429. To obtain a severance under Michigan law, petitioner must have been able to present "an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 347 Mich. at 346. Petitioner has not made such an offer of proof. The statements elicited from the cross-examination of the detectives do not demonstrate that petitioner's and the co-defendants' defense theories were so antagonistic as to prejudice petitioner. The fact that one co-defendant may be "pointing the finger" at petitioner or another co-defendant as the main perpetrator does not establish antagonistic defenses that are so prejudicial as to require severance. *Id.* at 349-351. Based on this record, it appears that counsel would not be able to make requisite offer of proof to obtain a severance under state law. Accordingly, the court concludes that petitioner's counsel was not ineffective for failing to request a separate trial.

       Finally, the court agrees with the Michigan Court of Appeals determination that petitioner was not prejudiced by the joint trial. The trial court and defense counsel took numerous steps to protect petitioner's rights during the course of the trial. Neither the prosecutor nor co-defendants' counsel engaged in a course of action to undermine the use of the redacted statements. In addition, the limited testimony elicited from the detectives implicating petitioner's participation in the sexual assaults is cumulative of other evidence, such as the victim's extensive and explicit testimony that petitioner repeatedly raped her.

       The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

30

nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### IV.    Conclusion

I respectfully recommend that Mr. Lang's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  May 29, 2007                          /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).